UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ADRIENNE S.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-01919-TWP-MJD |
| | ) | |
| FRANK BISIGNANO, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Claimant Adrienne S. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. § 423(d). For the reasons set forth below, the undersigned recommends the District Judge **REVERSE** the decision of the Commissioner.

**I. Background**

Claimant applied for DIB in November 2021, alleging an onset of disability as of December 31, 2018. [Dkt. 9-2 at 18.] Claimant's application was denied initially and again upon reconsideration, and a hearing was held before Administrative Law Judge Kevin Walker ("ALJ") on October 19, 2023. [*Id.* at 39-71.] On January 31, 2024, the ALJ determined that Claimant

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

was not disabled, and the Appeals Council denied her request for review on August 27, 2024. [*Id.* at 2-4, 18-30.] Claimant timely filed her Complaint on October 30, 2024, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a conclusive finding that the claimant either is or is not disabled, then he need not progress to the

next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (citing 20 CFR § 404.1520(a)(4)).

The Seventh Circuit recently set forth the proper standard of review in an appeal of the denial of disability benefits as follows:

> [W]e review the ALJ's decision deferentially, affirming if its conclusions are supported by substantial evidence. 42 U.S.C. § 405(g); *Deborah M.* [*v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021)]; *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (ALJ's residual functional capacity determination "must be supported by substantial evidence in the record"). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S.Ct. 1148, 203 L.Ed.2d 504 (2019), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). While we do not reweigh evidence, we conduct a critical review because a decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In addition, an ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it. See *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999).

*Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025). This is the standard the Court will apply in this case.

### III.   ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date on December 31, 2018. [Dkt. 9-2 at 20.] At step two, the ALJ found that Claimant had the following severe impairments: casiplagia fasciitis and plantar fasciitis in the feet, left foot surgery, degenerative joint disease in the bilateral knees, knee replacement, migraines, and obesity. [*Id.*] At step three, the ALJ found that these impairments did not meet or equal a listed impairment during the relevant time period. [*Id.* at 23.] The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity to perform

3

>sedentary work as defined in 20 CFR 404.1567(a) except she can lift and carry ten pounds occasionally and less than ten pounds frequently.  She can perform unlimited pushing and pulling, except for the weight limitations. The claimant can stand or walk for up to two hours in an eight-hour workday and can sit for up to six hours in an eight-hour workday. She can frequently balance (as defined in the SCO); occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; and never climb ladders, ropes, or scaffolds. The claimant can have no exposure to unprotected heights or hazardous machinery. She must use a cane to ambulate.

[*Id.* at 23-24.]

At step four, the ALJ found that Claimant was able to perform her past relevant work during the relevant time period.  [*Id.* at 28.]  Accordingly, the ALJ concluded that Claimant was not disabled.  [*Id.* at 29-30.]

### IV.  Discussion

Claimant raises the following issues for the Court's review: (1) whether the ALJ erred in conducting the subjective symptom analysis; (2) whether the ALJ erred in assessing the credibility of medical experts; and (3) whether the ALJ erred by failing to account for her limitations in concentration, persistence, and pace.  [Dkt. 11 at 1-2.]  The Court finds that Claimant has demonstrated reversible error on the first issue and thus needs not address her arguments under the remaining issues.

When assessing a claimant's subjective symptoms, an ALJ will complete a two-step process.  First, the ALJ will "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."  SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *3.  Second, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established," the ALJ will "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's

ability to perform work-related activities." *Id.* The ALJ will not evaluate an individual's symptoms based solely on objective medical evidence unless the objective medical evidence supports a finding that the claimant is in fact disabled. *Id.* at *4-5. The ALJ will consider factors including but not limited to the claimant's daily activities and the effectiveness of the claimant's medication or treatment. *Id.* at *7-8. The court must afford the ALJ's determination special deference, and it will only reverse if the ALJ's determination is patently wrong. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015).

      Claimant described her symptoms in multiple documents and in testimony during an oral hearing before the ALJ. Her disability report stated that she suffers from migraine headaches, casiplagia and plantar fasciitis, bilateral knee issues, anxiety, and depression and that these conditions caused her to stop working on December 31, 2018. [Dkt. 9-6 at 3.] Her headache questionnaire stated that she experiences "at least 3-4" migraines a week, which typically last about 2 to 4 hours, but which may last as long as 24 hours or more. [*Id.* at 13-14.] These migraines are debilitating and require her "to lay down with an ice pack on forehead and on back of neck with lights off, no talking[,] no TV[,] no nothing, and I do lay real still." [*Id.* at 14.] Her function report dated February 2022 stated that her knee pain makes it impossible to climb stairs, squat, bend, kneel, or lift more than 10 pounds, and her function report dated October 2022 stated that she cannot lift more than 5 pounds. [*Id.* at 21, 50.] She cannot walk further than a block without needing to rest for about 15 minutes. [*Id.* at 21.] During the oral hearing before the ALJ in October 2023, she testified that her pain on a typical day is 8/10. [Dkt. 9-2 at 51.] She experiences constant swelling in her knees, feet, and ankles, which requires her to elevate her legs for most of the day and "hinder[s] [her] from doing anything." [*Id.* at 63-64.] She also

spends about half of each day laying down.  [*Id.* at 66.]  She takes about 26 or 27 different medications, which cause drowsiness and make her feel like she "do[esn't] know if [she's] coming or going."  [*Id.* at 67.]

      The ALJ determined that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  [*Id.* at 24.]  In explaining his reasoning, the ALJ first summarized Claimant's medical records, which showed that she underwent five surgeries to repair torn menisci in her left and right knees in July 2018, January 2020, July 2020, January 2021, and September 2023.  [*Id.* at 24-26.]  She also underwent two foot surgeries—a left plantar fasciotomy in August 2021; and a multi-part surgery involving a left Evans calcaneal osteotomy, flexor digitorum long tendon transfer, and plantar fasciectomy in October 2022.  [*Id.* at 25-26.]  In addition to prescription medication, her pain was treated with knee injections, botox injections, occipital nerve blocks, the implantation of a spinal catheter and pain pump, and an epidural blood patch.  [*Id.*]  The ALJ also noted that she "participated in a considerable amount of physical therapy on multiple occasions," that "multiple MRIs of the knees showed objective abnormalities, including meniscus tears, consistent with [her] subjective reports of knee pain[,]" and that "[e]xaminers observed that [she] used a cane and had an unsteady or antalgic gait on multiple occasions[.]"  [*Id.* at 26.]  However, he made two findings that caused him to discredit her claims about the intensity, persistence, and limiting effects of her conditions.  First, "examiners . . . observed that [she] nonetheless was able to ambulate, and even that [she] retained a normal gait on multiple occasions."  [*Id.* at 27.]  Second, "she reported that [Botox injections] [were] effective" at treating her migraines.  [*Id.* at 26.]  Because of these

6

findings, the ALJ determined that Claimant's symptoms were not as intense, persistent, or limiting as she claimed and that she was capable of performing sedentary work. [*Id.* at 26.]

The Court finds that the ALJ erred in conducting the subjective symptom analysis by overstating claimant's reports about the effectiveness of botox injections as a treatment for chronic migraines. In considering the effectiveness of a claimant's medical treatment, "[t]he key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled." *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014); *see also Jarnutowski*, 48 F.4th 769, 775 (7th Cir. 2022) (improvement in pain after surgery did not support ALJ's assessment of claimant's RFC). Here, Claimant's medical records support a finding that her migraines improved with Botox injections, but they also show that she continued to experience frequent migraines that required regular neurology visits, injections, and medication. [*See*, *e.g.*, dkt. 9-9 at 514, 515, 604; dkt. 9-12 at 27, 53, 77, 104, 134, 166.] Despite this evidence, the ALJ assessed an RFC that does not account for any limitations arising from Claimant's migraines. [Dkt. 9-2 at 23-24.] Thus, the ALJ appears to have found that Claimant's migraines were so infrequent, non-severe, and non-limiting that they had no impact on her ability to engage in full-time work. *See Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021) (the ALJ must "include all of a claimant's limitations supported by the medical record" in the RFC and in the hypotheticals posed to the VE). Such a finding is simply not supported by Claimant's medical records, and the ALJ erred in concluding otherwise.[2]

---

[2] The ALJ's only consideration of the impact that Claimant's chronic migraines could have on her ability to work appears in his third hypothetical to the VE: "And then if we added to either of those first two hypotheticals that the individual would be off task 15% of the duty day and have unscheduled absences of two days a month, would there be any competitive employment for that individual?" [Dkt. 9-2 at 69.] The VE answered, "No, that would be work preclusive." [*Id.*]

The ALJ also erred by relying on medical records showing that Claimant "was able to ambulate" and "retained a normal gait on multiple occasions" to discredit her claims about the severity and limiting effects of her knee and foot pain. [Dkt. 9-2 at 27.] First, Claimant never alleged that she was unable to ambulate. Instead, she alleged that her ability to walk was significantly limited; that she needed to rest for 15 minutes after walking one block; that she needed to keep her legs elevated for most of the day to reduce swelling; that she could not climb stairs, squat, bend, or kneel; and that she could not lift more than five pounds. [Dkt. 9-2 at 63-64, 66; dkt. 9-6 at 21, 50.] These allegations are not contradicted by the fact that she "was able to ambulate" during medical exams. Second, Claimant's medical records are replete with notes that she had an abnormal gait, [*see, e.g.*, dkt. 9-7 at 275, 278, 287, 290, 293, 296, 299; dkt. 9-8 at 20, 24, 25, 172, 190, 198; dkt. 9-9 at 328, 339, 371; dkt. 9-10 at 33, 72, 75, 79, 87, 179, 327, 368; dkt. 9-12 at 206, 211; dkt. 9-13 at 50, 312, 314], and her need for five knee surgeries, two foot surgeries, considerable physical therapy, medications, and a surgically implanted spinal catheter and pain pump all indicate that she was experiencing severe and limiting chronic pain during the period of alleged disability. Further, occasional exam findings stating that Claimant had a normal gait do not contradict other alleged limitations, such as her professed inability to squat, bend, kneel, or lift more than five pounds.

Given these circumstances, the Court finds that the ALJ committed reversible error in conducting Claimant's subjective symptom analysis and that his decision should be reversed and remanded to the SSA for further proceedings.

---

Ultimately, the ALJ did not incorporate any time-off-task limitations or unscheduled absences into Claimant's RFC, nor did he incorporate any other limitations arising from her chronic migraines. [*Id.* at 24-25.]

8

## V. Conclusion

For the reasons described above, the Magistrate Judge recommends that the District Judge **REVERSE** and **REMAND** the Commissioner's decision that Claimant was not disabled. Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P 72(b). The failure to file objections within 14 days of this Order will constitute a waiver of subsequent review absent a showing of good cause for that failure.

SO ORDERED.

Dated: 10 NOV 2025

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.